# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

---

UNITED STATES OF AMERICA,

        Plaintiff,

v.

JAMILLO DONTE SPIGHT,

        Defendant.

CASE NO. 13-CR-254 (DWF/TNL)

**REPORT & RECOMMENDATION**

---

Carol Kayser, Assistant United States Attorney, **UNITED STATES ATTORNEY'S OFFICE**, 300 South Fourth Street, Suite 600, Minneapolis, MN 55415, for Plaintiff; and

A.L. Brown, **CAPITOL CITY LAW GROUP, LLC**, 155 South Wabasha, Suite 125, Saint Paul, MN 55107; and Caroline Durham, 413 Wacouta Street, Suite 430, Saint Paul, MN 55101, for Defendant.

This matter is before the Court, United States Magistrate Judge Tony N. Leung, on Defendant Jamillo Donte Spight's Motion to Suppress and Prohibit DNA Testing (ECF No. 34). The Court heard oral argument on the motion on December 5, 2013. Carol Kayser represented the United States. A.L. Brown and Caroline Durham represented Spight.

## I.      BACKGROUND

Defendant is charged with being an armed career criminal in possession of a firearm in violation of 18 U.S.C. § 922(g)(1) and 924(a)(2). (ECF No. 18.) The facts of his arrest are as follows:

> Agent [Kylie] Williamson [of the U.S. Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF")] testified that on September 21, 2013, the Saint Paul police were called to Johnny Baby's bar at 981 University Avenue, in St. Paul, Minnesota, in response to a 911 call of gunshots inside the bar. Police arrived and spoke to the owner of the bar and learned that a man entered the bar carrying a gun in his hand. A bar security officer wrestled with the man. During the struggle, the man fired the gun two times inside the bar. The security officer was able to wrestle the gun away from the man. The security officer took the man into a separate area where the man was held for police. Police identified the man as Jamillo Donte Spight, the defendant herein. Police recovered the gun and two spent cartridges from the bar. The gun was identified as a Smith & Wesson, .40 caliber semi-automatic pistol.

(Order of Detention at 2, ECF No. 16.)

Defendant moves "to prohibit the search of [his] DNA until the Government identifies a usable DNA profile to compare it against." (Def.'s Motion to Suppress at 1, ECF No. 34.)[1] On October 7, 2013, after Defendant had been arrested, law enforcement obtained a warrant to obtain a "Buccal (oral) DNA swab" from Defendant. (ECF No. 40.) A report from the Bureau of Criminal Apprehension ("BCA") provides that at least one testable DNA sample is retrievable from the firearm seized during Defendant's arrest. (*See* ECF No. 42.)

---

[1] Defendant's motion also requests an order suppressing any evidence of gun-shot residue. At the December 5, 2013 motions hearing, the Government represented to Defendant and to the Court that it does not intend to present any gun-shot-residue evidence at trial. Accordingly, to the extent that Defendant's motion seeks to suppress gun-shot-reside evidence, it will be denied as moot.

## II.    ANALYSIS

### A. *United States v. Roberts* and *United States v. Robinson*

Defendant argues that the Government should be required to produce a usable DNA profile off the evidence it has before it can analyze Defendant's DNA sample. For support, Defendant cites two decisions from this district: *United States v. Robinson*, Crim. No. 11-cr-325 (DWF/LIB), ECF No. 32 (Dec. 2, 2011), *adopted*, ECF No. 40 (Mar. 20, 2012); and *United States v. Roberts*, Case No. 10-mj-458 (LIB), ECF No. 15 (Nov. 29, 2010).

In *Roberts*, the Government moved to compel Roberts to provide fingerprint and DNA samples for investigatory purposes. Roberts was charged with being a felon in possession of a firearm. *Roberts*, Case No. 10-mj-458 (LIB), ECF No. 32 at 1. The Government moved for an order compelling Roberts to provide print and DNA samples to compare with any "fingerprints or DNA evidence that may be found on the firearm alleged to be possessed by [him]." *Id.* The Government moved for this order before it determined whether fingerprint or DNA samples existed on the firearm in question. *Id.* at 4, 5.

In denying the Government's motion, the *Roberts* court noted that "the Government had not yet, by its own admission, even tested the firearm at issue in this case to see whether there are any retrievable fingerprints or DNA evidence to which any comparison can be made." *Id.* at 7. The court determined that the Government could not compel Roberts to provide fingerprint and DNA samples without a demonstration of "some nexus between the bodily evidentiary items to be seized and the criminal activity."

3

*Id.* The court was hesitant to "allow[] the Government to obtain [Roberts's prints and] DNA sample without any showing whatsoever at this early stage of the proceedings that it will be useful to any ongoing investigation and that the intrusion into [Roberts's] privacy is not fruitless." *Id.* (citation omitted). Such "suspicionless searches on pretrial detainess for reasons other than prison security" would violate the Fourth Amendment's prohibition on unreasonable searches and seizures. *Id.* (quoting *Friedman v. Boucher*, 580 F.3d 847, 856-57 (9th Cir. 2009)).

In *Robinson*, the defendant ran and attempted to hide from police. *Robinson*, Crim No. 11-cr-325 (DWF/LIB), ECF No. 32 at 2. Police found a gun in the room Robinson was found hiding in. *Id.* Police then obtained a warrant authorizing seizure of a DNA sample from Robinson. *Id.* The issuing judge included the following handwritten language on the warrant: "The specimen sample shall be retained by the Bemidji Police Department in secure evidence storage and not transmitted to the BCA until further Order of this Court." *Id.* Robinson moved to suppress his DNA sample and challenged the validity of the warrant to obtain his DNA sample.

Ruling on the defendant's motion, the court determined that "the Government ha[d] not attempted to make any showing to support" a finding of some nexus between the items to be seized and the criminal activity being investigated. *Id.* at 5. The Government had "provided no evidence that it ha[d] as yet even tested the firearm at issue in this case to see whether there is any retrievable DNA evidence to which any comparison of the DNA sample" could be compared. *Id.* The court determined that

"probable cause did not exist for taking a DNA sample from [Robinson] and that the warrant issued by the Beltrami County District Court Judge was issued in error." *Id.*

**B. Defendant's Motion Must Be Denied Because the Record Portrays a Connection Between Defendant's DNA Sample and the Alleged Criminal Activity**

In both of the cases above, the court required a demonstrated connection between the DNA sample and the criminal activity. *Roberts*, Case No. 10-mj-458 (LIB), ECF No. 15 at 7; *Robinson*, Crim. No. 11-cr-325 (DWF/LIB), ECF No. 32 at 5. The facts before this Court, however, differ from both *Roberts* and *Robinson* in important respects. First and foremost, Defendant does not contest the validity of the warrant that allowed the Government to obtain a sample of his DNA. (*See* Def.'s Mem. in Supp. at 2, ECF No. 34.) Rather, Defendant argues that the court-ordered warrant to seize Defendant's DNA is insufficient to grant the Government authority to *search* his DNA. (*Id.*) In other words, Defendant argues that the Government cannot test his DNA without a new warrant.

Under Eighth Circuit precedent, however, the testing of a suspect's blood requires no justification beyond that necessary to obtain the sample. *Dodd v. Jones*, 623 F.3d 563, 569 (8th Cir. 2010). The acquisition and later analysis of a blood sample (and, by analogy, a saliva sample) are "'a single event for Fourth Amendment purposes.'" *Id.* (quoting *United States v. Snyder*, 852 F.2d 471, 474 (9th Cir. 1988)). Thus, once the Government obtains sufficient grounds to draw an individual's blood, "the subsequent testing of that blood had 'no independent significance for fourth amendment purposes.'" *Dodd*, 623 F.3d at 569 (quoting *Snyder*, 852 F.2d at 474). In the instant case, the Government acquired a warrant (which is not being challenged) authorizing it to obtain a

sample of Defendant's DNA, and this authorization extends to the Government's subsequent analysis of the sample.

Second, unlike *Robinson*, the warrant authorizing the Government to obtain a DNA sample from Defendant did not limit what the Government could do with the sample. The warrant in *Robinson* included a handwritten note from the issuing judge that prohibited the Government from transmitting the specimen to the BCA without further authorization. *Robinson*, Crim. No. 11-cr-325 (DWF/LIB), ECF No. 32 at 2. The warrant authorizing the Government to obtain a DNA sample from Defendant in this case contains no such limitation from the issuing judge. (*See* ECF No. 40.)

Third, the instant case differs from *Roberts* in that the court was addressing whether to allow the Government to *obtain* a DNA sample, not whether the Government could *test* a sample already within its possession pursuant to a warrant. In this case, the Government has a lawfully obtained DNA sample from Defendant after demonstrating probable cause to a neutral magistrate. Moreover, the record contains a BCA report stating that at least one retrievable and testable DNA sample is present on the firearm at issue for possible comparison of any nexus between the bodily evidentiary items and the criminal activity. The court in *Roberts* noted that nothing in the record before the court connected the evidence the Government sought with the alleged criminal conduct. *Roberts*, Case No. 10-mj-458 (LIB), ECF No. 15 at 7. Here, however, the Government has tested the firearm at issue to see whether retrievable evidence existed.

The Government obtained a warrant to collect a DNA sample from Defendant. The warrant did not place any limits on what the Government could do with the sample,

and the Government has a BCA report stating that a testable DNA sample can be retrieved from the firearm at issue. Accordingly, Defendant's motion must be denied.

## III.   RECOMMENDATION

Based on the foregoing, and all the files, records and proceedings herein, **IT IS HEREBY RECOMMENDED** that Defendant Jamillo Donte Spight's Motion to Suppress (ECF No. 34) be **DENIED.**


Dated:    December 19, 2013          s/ Tony N. Leung
                                     Tony N. Leung
                                     United States Magistrate Judge
                                     District of Minnesota


                                     *United States of America v. Jamillo Donte Spight*
                                     File No. 13-cr-254 (DWF/TNL)

Pursuant to Local Rule 72.2(b), any party may object to this Report and Recommendation by filing with the Clerk of Court and by serving upon all parties written objections that specifically identify the portions of the Report to which objections are made and the basis of each objection. This Report and Recommendation does not constitute an order or judgment from the District Court and it is therefore not directly appealable to the Circuit Court of Appeals. Written objections must be filed with the Court on or before **January 3, 2014.**