# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

United States of America,                          Criminal No. 13-254 (DWF/TNL)
                                                        Civil No. 16-2459 (DWF)
                Respondent-Plaintiff,

v.                                                      **MEMORANDUM**
                                                    **OPINION AND ORDER**
Jamillo Donte Spight,

                Petitioner-Defendant.


# INTRODUCTION

This matter is before the Court on Petitioner-Defendant Jamillo Donte Spight's

("Petitioner-Defendant") motion pursuant to 28 U.S.C. § 2255 (Doc. No. 119) in which

he alleges that his trial counsel was ineffective because:  (1) he did not present DNA

evidence in the case connecting him to the firearm in question; and (2) he did not pursue

gunshot-residue testing.  The Petitioner-Defendant also alleges that his appellate counsel

was ineffective because appellate counsel:  (1) failed to pursue a *Johnson* challenge[1] to

his sentencing pursuant to the Armed Career Criminal Act ("ACCA");[2] (2) failed to

"establish the proper merits" for his *Brady* claim and his interstate-nexus claim; and

(3) failed to petition for a rehearing *en banc* before the Eighth Circuit Court of Appeals.

---

[1]     A Johnson challenge refers to *Johnson v. United States*, 135 S. Ct. 2551 (2015), where the Supreme Court held that the residual clause of the ACCA was unconstitutionally vague.

[2]     18 U.S.C. § 924(e).

The United States ("the Government") opposes the Petitioner-Defendant's motion.  (Doc. No. 121.)  For the reasons that the Court discusses below, the Court denies the Petitioner-Defendant's motion.

## BACKGROUND

A grand jury indicted the Petitioner-Defendant for being an Armed Career Criminal in Possession of a Firearm in violation of 18 U.S.C. §§ 922(g)(1), 924(a)(2), and 924(e) following his arrest for possession of a firearm at Johnny Baby's, a neighborhood bar in St. Paul, Minnesota.  (Doc. No. 18.)  The Petitioner-Defendant waived his right to a jury trial, and the case proceeded as a one-day trial before this Court on January 27, 2014.

The Government called the following witnesses:  Eric Wasson and Anika Davis, two security guards who worked at Johnny Baby's the night that the Petitioner-Defendant brought the gun to the bar; Jonathan Price, the owner of Johnny Baby's; Robert Bisson, the St. Paul police officer who took the Petitioner-Defendant into custody and transported him to jail; and Martin Robert Siebenaler, a Special Agent with the Bureau of Alcohol, Tobacco, Firearms & Explosives ("ATF").

Wasson testified that he approached the Defendant, had a three- or four-minute conversation with him, after which the Petitioner-Defendant "mumbled something" and walked out of the bar.  (Doc. No. 68, Finding of Fact ¶ 11.)  Subsequently, the Petitioner-Defendant returned to the bar with a pistol in his hand.  Seeing the gun,

Wasson grabbed it.  In the ensuing struggle, the gun discharged twice.  (Doc. No. 68, Finding of Fact ¶ 12.)

Surveillance video from Johnny Baby's confirmed Wasson's testimony.  Indeed, Wasson's positive identification of the Petitioner-Defendant was consistent with all evidence in the case.  Anika Davis, another security guard at Johnny Baby's, also observed the Petitioner-Defendant with a gun wrapped in what she believed to be boxer shorts.  (Doc. No. 68, Finding of Fact ¶ 14.)  ATF Special Agent Martin Robert Siebenaler testified that the gun in question was a firearm as defined under 18 U.S.C. § 921(a)(3), that it was manufactured in Connecticut, and that the gun therefore traveled in interstate commerce before the Petitioner-Defendant possessed it.  (Doc. No. 68, Finding of Fact ¶ 17.)

The Court also concluded that, based upon the evidence at trial, the Petitioner-Defendant had five prior felonies as follows:

| OFFENSE | DATE OF OFFENSE | DATE OF CONVICTION | JURISDICTION |
|---------|-----------------|--------------------|--------------|
| Terroristic Threats | May 19, 2012 | October 11, 2012 | Ramsey County, Minnesota |
| Sale of Narcotics Third Degree | June 4, 2009 | September 28, 2009 | Ramsey County, Minnesota |
| Aggravated Robbery | March 2, 2002 | June 27, 2002 | Ramsey County, Minnesota |
| Sale of Narcotics Third Degree | October 25, 2001 | February 19, 2002 | Ramsey County, Minnesota |
| Auto Theft | October 17, 2001 | February 19, 2002 | Ramsey County, Minnesota |

(*See* Doc. Nos. 18 & 68, Finding of Fact ¶ 18.)

The parties stipulated that on or prior to September 21, 2013, the Petitioner-Defendant was prohibited by law from possessing a firearm because he had been convicted of a crime punishable by imprisonment for a term exceeding one year. (*See* Government's Trial Exhibit 35.)  On January 6, 2014, the Court concluded that the Petitioner-Defendant was an armed career criminal in possession of a firearm and sentenced him to 212 months.

As the Government observed, the Petitioner-Defendant complained at the time of his sentencing about:  (1) his trial counsel's decision not to offer DNA evidence at trial;[3] and (2) his trial counsel's decision not to pursue gunshot residue testing.  (Sentencing Tr. at 36-39.)  Significantly, the Court, at that time, responded to the Petitioner-Defendant by stating that its verdict in the case would not have been different even with the disputed evidence.  (Sentencing Tr. at 49-50.)

The Petitioner-Defendant filed an appeal to the Eighth Circuit and raised the following issues:  (1) sufficiency of the evidence; (2) whether this Court erred in admitting the testimony of an ATF interstate-nexus expert; (3) whether the Defendant's trial counsel was ineffective for making an evidentiary stipulation and allegedly not adequately investigating the case; and (4) whether the Government failed to disclose

---

[3]     The DNA evidence from the gun showed that there were four or more contributors to the DNA profile.  (Sentencing Tr. at 36.)  While 89.3% percent of the population can be excluded as contributing to the profile, the Petitioner-Defendant could not.  *Id.*

exculpatory evidence during discovery. *See United States v. Spight*, 817 F.3d 1099, 1100-01 (8th Cir. 2016). The Eighth Circuit Court of Appeals declined to consider the Defendant's claim for ineffective assistance of counsel and affirmed the Court on all other issues raised by the Defendant.

## DISCUSSION

The United States Constitution guarantees that the accused "shall enjoy the right . . . to have the Assistance of Counsel" in criminal prosecutions. U.S. Const. amend. VI. To prevail on a claim for ineffective assistance of counsel under § 2255, however, a defendant must overcome a "heavy burden." *United States v. Apfel*, 97 F.3d 1074, 1076 (8th Cir. 1996). To overcome that burden, a defendant must first "show that counsel's performance was deficient." *Strickland v. Washington*, 466 U.S. 668, 687 (1984). The deficiency must be "so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* Second, the defendant must establish that the deficient performance actually prejudiced the defense. *Id.*

To establish that there was a deficient performance, the defendant must show that the errors were not the result of "reasonable professional judgment." *Id.* at 690. There is a strong presumption "that counsel . . . rendered adequate assistance." *Id.* A defendant must prove, then, with "a probability sufficient to undermine confidence in the outcome," that "but for the counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.

**I.     Ineffective Assistance Allegations of the Petitioner-Defendant's Trial Counsel**

The record before this Court does not support the assertions of the Petitioner-Defendant.  In fact, the transcripts of all of the proceedings belie the notion that the Petitioner-Defendant received ineffective assistance of counsel.  None of the claims raised by the Petitioner-Defendant rises to the level of an error under the first prong of the *Strickland* test.  As a result, the Petitioner-Defendant has failed to meet the burden necessary to demonstrate his claim for ineffective assistance of counsel.

Even if the Court were to assume that one or more of the claims raised in the Petitioner-Defendant's motion rises to the level of ineffective assistance of counsel, which they do not, the motion would still fail because the Petitioner-Defendant has not satisfied the second prong of the *Strickland* test, which requires that the error result in actual prejudice to the Petitioner-Defendant.  The Petitioner-Defendant has asserted that his trial counsel was ineffective because he did not present DNA evidence in the case and he did not pursue gunshot-residue testing.  Defendant, however, was not actually prejudiced as required under the *Strickland* test because the surveillance video at Johnny Baby's clearly showed the Petitioner-Defendant committing the crime.  (Government Tr. Ex. 9.)  And the Court specifically stated to the Petitioner-Defendant at the time of sentencing that the verdict would have been the same, given the presence of the surveillance video.  Thus, the Petitioner-Defendant was not actually prejudiced.

II.     **Ineffective Assistance of Appellate Counsel Allegations**

The Petitioner-Defendant also asserts that his appellate lawyer was ineffective because he failed to pursue a *Johnson* claim, failed to appeal his claims regarding so-called exculpatory evidence and interstate nexus, and failed to request an *en banc* hearing.

A.      ***Johnson* claim**

The Petitioner-Defendant asserts that his appellate counsel was ineffective because he failed to raise a *Johnson* challenge to his sentencing pursuant to the ACCA.  The ACCA establishes enhancement sentencing for a felon-in-possession case where a defendant has three previous convictions for a violent felony or a serious drug offense, or both, committed on occasions different from one another.  18 U.S.C. § 924(e)(1).  As the Government correctly noted, at the time of the Petitioner-Defendant's sentencing in January 2015, he had four qualifying predicate offenses:  (1) Violation of Controlled Substance Law in the Third Degree – Sale of Cocaine (PSR ¶ 38); (2) First Degree Aggravated Robbery (PSR ¶ 39); (3) Violation of Controlled Substance Law in the Third Degree – Sale of Cocaine (PSR ¶ 41); and Terroristic Threats (PSR ¶ 43).

In June 2015, the United States Supreme Court held in *Johnson v. United States* that the residual clause of the ACCA was unconstitutionally vague.  135 S. Ct. 2551, 2557 (2015).  The Supreme Court, however, did not strike any other provision of the ACCA.  *See id.* at 2563.  The Government argues that even after *Johnson*, the Petitioner-Defendant still has at least three predicate offenses.  One offense that arguably

does not survive the *Johnson* analysis is the Petitioner-Defendant's conviction for terroristic threats.  But at a minimum, the Government argues, the Petitioner-Defendant still has three predicate felonies and is therefore subject to sentence enhancement under the ACCA.

### 1.   First-degree aggravated robbery

Under subsection (2)(B)(I) of the ACCA, which is commonly referred to as the force clause, a "violent felony" is "any crime punishable by imprisonment for a term exceeding one year" "that . . . has as an element the use, attempted use, or threatened use of physical force against the person of another."  18 U.S.C. § 924(e)(2)(B)(I).  In his most recent submission, the Petitioner-Defendant argues that his conviction for first-degree aggravated robbery is not a violent felony under the ACCA.  (Doc. No. 132.)

Under Minnesota law, a person commits first-degree aggravated robbery when:

[W]hile committing a robbery, [the person] is armed with a dangerous weapon or any article used or fashioned in a manner to lead the victim to reasonably believe it to be a dangerous weapon, or inflicts bodily harm upon another, is guilty of aggravated robbery in the first degree and may be sentenced to imprisonment for not more than 20 years or to payment of a fine of not more than $35,000, or both.

M.S.A. § 609.245, subd. 1.

After *Johnson*, courts in our Circuit and in the District of Minnesota have disagreed with whether first-degree aggravated robbery categorically qualifies as a violent felony pursuant to the ACCA's force clause.  *See, e.g.*, *Taylor*, 2017 WL 506253, at *5-7 (D. Minn. Jan. 2, 2017) (concluding that simple robbery is a predicate felony);

*United States v. Townsend*, 2016 WL 7339202, at *3-4 (D. Minn. Dec. 19, 2016) (concluding that first-degree aggravated robbery is divisible, meaning that a conviction under the dangerous weapon clause is not an ACCA predicate offense while a conviction under the inflicting bodily harm clause is a predicate offense); *United States v. Pettis*, 2016 WL 5107035, at *3 & *5 (D. Minn. Sept. 19, 2016) (concluding that simple robbery is not a predicate felony under the ACCA and that first-degree aggravated robbery is divisible, meaning that a conviction under the dangerous weapon clause is not an ACCA predicate offense while a conviction under the inflicting bodily harm clause is an ACCA predicate offense); *United States v. Jones*, 2016 WL 4186929, at *4 (D. Minn. Aug. 8, 2016) (concluding that first-degree aggravated robbery is divisible, meaning that a conviction under the dangerous weapon clause is not an ACCA predicate offense while a conviction under the inflicting bodily harm clause is an ACCA predicate offense); *United States v. Crandall*, 2016 WL 3512137 (D. Minn. June 22, 2016) (concluding that both clauses of first-degree aggravated robbery qualify as ACCA predicate offenses).

Under Minnesota law, first-degree aggravated robbery has four elements:

**First**, the defendant took something from the person or in the presence of the person.

**Second**, the defendant knew that he was not entitled to take it.

**Third**, the defendant used force[4] or the threat of imminent force[5] against the victim to overcome resistance or overcome the powers of

---

[4]      The term "force" means the "infliction, attempted infliction, or threatened infliction by the actor of bodily harm or commission or threat of any other crime by the
(Footnote Continued on Next Page)

resistance to or compel acquiescence in the taking or carrying off of the property.

**Fourth**, the defendant was armed with a dangerous weapon[6] or was armed with any article used or fashioned in a manner to lead the victim to reasonably believe that the article to be a dangerous weapon or inflicted bodily harm[7] upon the victim.

*See* 10 Minn. Prac., Jury Instr. Guides–Criminal, CRIMJIG 14.04 (6th ed. 2015).  A firearm whether loaded or unloaded is a dangerous weapon.  *See id.*

Under Minnesota law, when a robber commits first degree aggravated robbery, he must necessarily commit an act of simple robbery.  *See State v. Oksanen*, 149 N.W.2d 27, 29 (Minn. 1967) ("[O]ne must be guilty of simple robbery before one can be guilty of aggravated robbery.").  Simple robbery is a lesser-included offense to aggravated robbery in the first-degree.  Similarly, in committing simple robbery, the robber must necessarily commit at least assault in the fifth degree.  *State v. Stanifer*, 382 N.W.2d 213 (Minn. App.

---

(Footnote Continued From Previous Page)
actor against the victim which causes the complainant to reasonably believe that the actor has the present ability to execute the threat.  M.S.A. § 609.341, subd. 3.

[5]   The term "threat of imminent force" means the intentional creation in the victim's mind of an understanding that if he resisted or refused to cooperate, force would immediately be used against him.

[6]   A "dangerous weapon" is anything designed as a weapon and capable of producing death or great bodily harm, any combustible or flammable liquid or anything else that, in the manner used or intended to be used, is known to be capable of producing death or great bodily harm, or any fire that is used to produce death or great bodily harm. "Great bodily harm" means bodily injury that creates a high probability of death, causes serious permanent disfigurement, or causes a permanent or protracted loss or impairment of the function of any part of the body or other serious bodily harm.

[7]   "Bodily harm" means physical pain or injury, illness, or any impairment of physical condition.

1986).  Assault in the fifth-degree (a misdemeanor) is a lesser-included offense to the felony of simple robbery.  *Id.*  Under Minnesota law, a person commits an assault in the fifth-degree if he either commits an act with intent to cause fear in another of immediate bodily harm or death, or intentionally inflicts or attempts to inflict bodily harm upon another person.  M.S.A. § 609.224, subd. 1.

In a similar context, the Eighth Circuit concluded that felony convictions of the Minnesota domestic abuse statute[8]—which contains identical elements and definitions to those for assault in the fifth-degree—are predicate felonies pursuant to the force clause of the ACCA.  *United States v. Schaffer*, 818 F.3d 796, 798-99 (8th Cir. 2016).  In *Schaffer*, the defendant was convicted of a felony for committing an act against a family or household member with intent to cause fear in another of immediate bodily harm or death.  *See id.* at 797.  The Eighth Circuit held that such a conviction was a predicate felony under the ACCA.  *Id.* at 798.

Further, the *Schaffer* case must be read in the context of *United States v. Lindsay*, 827 F.3d 733 (8th Cir. 2016) (decided two months later).  In *Lindsay*, the defendant argued that his convictions for second-degree assault were not predicate felonies under the ACCA because under Minnesota's assault statute, "'assault-fear' felonies include assaults that lack a physical force element and 'assault-harm' felonies require only bodily harm, which can be inflicted without the use of physical force."  *Id.* at 739.  The Eighth

---

[8]     Minn. Stat. § 609.2242.

Circuit rejected the defendant's argument and held that threatening the use of physical force also constitutes a predicate offense so long as the force threatened is violent physical force. *Id.* at 740.

Admittedly, the courts in this District have struggled with whether Minnesota's first-degree aggravated-robbery statute qualifies as a violent felony under the ACCA because under Minnesota law a person commits aggravated robbery if, while committing a robbery, he is "armed with a dangerous weapon."  Minn. Stat. § 609.245, subd. 1. Thus, some courts have concluded, that the ACCA does not apply because under Minnesota law a robber commits aggravated robbery merely by possessing a dangerous weapon.  *See Townsend*, 2016 WL 7339202, at *4; *Pettis*, 2016 WL 5107035, at *5; *Jones*, 2016 WL 4186929, at *4.  This interpretation, however, creates the anomaly where less serious crimes (in terms of potential penalties and violence required) such as assault or domestic assault are deemed predicate offenses under the ACCA while more serious offenses (again, in terms of violence required and potential penalties) such as first-degree aggravated robbery are not considered predicate offenses.

In deciding whether a prior conviction qualifies as a predicate offense under the ACCA, the Court must first apply the categorical approach, which looks "only to the fact of conviction and the statutory definition of the prior offense."  *United States v. Eason*, 829 F.3d 633, 640 (8th Cir. July 14, 2016).  In applying that method, this Court concludes that a defendant cannot be convicted of first-degree aggravated robbery without using, attempting to use, or threatening to use physical force.  Thus, both clauses of the

Minnesota aggravated-robbery statute qualify as violent felonies because both have "as an element the use, attempted use, or threatened use of physical force." *See Lindsey*, 827 F.3d at 740. When a robber is in possession of a dangerous weapon or other article made to look like a dangerous weapon, it involves the use, attempted use, or threatened use of physical force. A classic example of that is one of the Petitioner-Defendant's prior convictions, as set forth in the criminal complaint, to which he pled guilty:

> On or about the 2nd day of March, 2002, in Ramsey County, Minnesota, Jamillo Donte Spight, aiding and abetting and being aided and abetted by others, did wrongfully and unlawfully, having knowledge of not being entitled thereto, take from the person or in the presence of another personal property and used or threatened the imminent use of force against a person to overcome resistance to or compel acquiescence in the taking or carrying away of the property, and while committing the robbery, defendant or an accomplice was armed with a dangerous weapon or an article used or fashioned in a manner to lead the victim to reasonably believe it to be a dangerous weapon.[9]

*State v. Spight*, Crim. No. 02-788, Complaint. As Petitioner-Defendant's prior conviction illustrates, a defendant who is "armed" with a "dangerous weapon" while committing a robbery must necessarily use, attempt, or threaten physical force against another person.

---

[9]   In the exchange between the judge and the Petitioner-Defendant, the Petitioner-Defendant acknowledged that simultaneous with displaying a sawed-off shotgun to the victims in the store, they demanded money from them by saying, "Don't move, don't move, mother ------!" and "Give me the ------- money!" *State v. Spight*, Crim. No. 02-788, Complaint.

Thus, Minnesota's first-degree aggravated-robbery statute categorically qualifies as a violent felony pursuant to the ACCA's force clause.[10]

### 2.  Serious drug offense

Under the ACCA post-*Johnson*, "serious drug offenses" still qualify as predicate offenses.  The Petitioner-Defendant has two prior convictions for Violation of a Controlled Substance Law in the Third Degree – Sale of Cocaine.  (Presentence Investigation Report ("PSR") ¶¶ 38, 41.)  "Serious drug offenses" include any offenses under state law that involve "distributing[] or possessing with intent to manufacture or distribute[] a controlled substance . . . for which a maximum term of imprisonment of ten years or more is prescribed by law."  18 U.S.C. § 924(e)(2)(A)(ii).  The Petitioner-Defendant's two Minnesota state-court convictions for Third Degree Sale of Cocaine carried a maximum term of imprisonment of twenty years.  Minn. Stat. § 152.023(3).  Both convictions fit the ACCA's definition of "serious drug offense."  The Petitioner-Defendant therefore has three qualifying predicate offenses for sentencing pursuant to the ACCA.  Thus, Petitioner-Defendant's counsel was not ineffective for failing to raise a *Johnson* challenge on appeal.

### B.  Failure to raise exculpatory evidence claim:  *Brady* claim on appeal

The Petitioner-Defendant asserts that his appellate counsel was also ineffective because he failed to "establish the proper merits" for his *Brady* claim and his

---

[10]    The Court also concurs with *Taylor*, 2017 WL 506253, at *5-7, which held that simple robbery under Minnesota law is a violent felony for purposes of the ACCA.

interstate-nexus claim.  This Court is at a loss as to how these claims could have affected his appeal or the verdict in his trial.  Indeed, the Eighth Circuit found the Petitioner-Defendant's *Brady* claim to be "meritless," because there was "no mention of any exculpatory fact, material or otherwise, withheld by the prosecution."  *United States v. Spight*, 817 F.3d at 1104.  Here, the Petitioner-Defendant has pointed to no exculpatory evidence that was available and overlooked by his trial counsel or appellate counsel.  Given the record before this Court, including the surveillance video, the Court cannot envision any evidence of any kind that would have changed the result in this case.

The Court takes the same position with respect to the so-called interstate-nexus claim.  On appeal, the Eighth Circuit concluded that this Court properly admitted "Agent Siebenaler's expert testimony because he based his opinion on the kinds of evidence we have previously considered sufficient."  *Id.* at 1103.  Further, the record before this Court belies the notion that the Petitioner-Defendant's appellate counsel was ineffective in challenging Agent Siebenaler's testimony.  Thus, the Petitioner-Defendant has failed to demonstrate that his appellate counsel was ineffective or that the Petitioner-Defendant was actually prejudiced with respect to his *Brady* claim or interstate-nexus claim.

### C.    Failure to petition or request an *en banc* hearing

Finally, the Petitioner-Defendant asserts that his appellate counsel was ineffective for failing to file a petition for rehearing *en banc*.  The Petitioner-Defendant, however, points to nothing in the record to suggest that the Eighth Circuit would have granted any rehearing or rehearing *en banc* had his appellate counsel made the application.  More

importantly, the Petitioner-Defendant has failed to demonstrate that the ultimate outcome of this proceeding would have changed in any way.  Thus, the Petitioner-Defendant has failed to show his appellate counsel was ineffective for failing to seek rehearing.

### D.     Prosecutor's alleged failure to disclose exculpatory evidence

In his current motion, the Petitioner-Defendant attempts to relitigate the same argument that he made on appeal:  namely, that the Government failed to disclose exculpatory evidence during discovery.  *See Spight*, 817 F.3d at 1103-04 ("Spight's argument is meritless.  It contains no mention of any exculpatory fact, material or otherwise, withheld by the prosecution").  As the Government correctly points out:  "It is well settled that claims which were raised and decided on direct appeal cannot be relitigated on a motion to vacate pursuant to 28 U.S.C. § 2255."  *Bear Stops v. United States*, 339 F.3d 777, 780 (8th Cir. 2003).  Regardless of this bar on relitigation, the Court again reiterates that it can envision no evidence that would be deemed exculpatory, given the overwhelming evidence in this case, including the surveillance video.  (Government's Trial Exhibit 9.)  Thus, Defendant's motion to vacate based on allegedly undisclosed exculpatory evidence also fails.

## III.    Evidentiary Hearing

Based on the record before the Court, there is no reason for the Court to further explore any credibility issues with respect to Petitioner-Defendant's claims.  A § 2255 motion can be dismissed without a hearing when:  (1) defendant's allegations, if accepted as true, would not entitle him to relief; or (2) the allegations cannot be accepted as true

because they are contradicted by the record, are inherently incredible, or are conclusions, rather than statements of fact. *Delgado v. United States*, 162 F.3d 981, 983 (8th Cir. 1998). Applying that standard to the Petitioner-Defendant's allegations and the record before the Court, the Court concludes that no evidentiary hearing is required in this case.

## IV.    Certificate of Appealability

An appeal cannot be taken from a final order denying a motion under § 2255 without a certificate of appealability ("COA"). 28 U.S.C. § 2253(c)(1)(B)(2006); Fed. R. App. P. 22(b)(1). A court cannot grant a COA unless the applicant has made "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(3).

The Court has considered whether the issuance of a COA is appropriate. *See Tiedeman v. Benson*, 122 F.3d 518 (8th Cir. 1997). In that context, the Court concludes that no issue raised is "debatable among reasonable jurists." *Flieger v. Delo*, 16 F.3d 878, 882-83 (8th Cir. 1994) (citing *Lozado v. Deeds*, 498 U.S. 430, 432 (1991) (per curiam)). The Petitioner-Defendant has not, therefore, made the "substantial showing of the denial of a constitutional right" necessary for the issuance of a COA. 28 U.S.C. § 2253(c)(2).

## CONCLUSION

The record before this Court, including: (1) the bench trial; (2) the transcript from that trial and the Court's findings and conclusions; (3) the sentencing hearing, including this Court's exchange with the Petitioner-Defendant; and (4) the Eighth Circuit's opinion, entirely forecloses any notion that the Petitioner-Defendant received ineffective

assistance of counsel under *Strickland* from either his trial counsel or his appellate counsel. In fact, not only was there not any actual prejudice to the Petitioner-Defendant, but based on the record before this Court, the Court cannot envision any evidence that it could have received or excluded that would have changed the verdict or the sentencing. For these reasons, the Court has respectfully denied the Petitioner-Defendant's motion asserting that he received ineffective assistance of counsel.

Based upon the presentations and the submissions of the parties, the Court having carefully reviewed the entire record in this matter, and the Court being otherwise duly advised in the premises, the Court hereby enters the following:

## ORDER

1.      Petitioner-Defendant Jamillo Donte Spight's *pro se* motion pursuant to 28 U.S.C. § 2255, (Doc. No. [119]), is respectfully **DENIED**.

2.      Petitioner-Defendant Jamillo Donte Spight's *pro se* Motions for a Rule 8 Evidentiary Hearing (Doc. No. [124] & [133]) are **DENIED AS MOOT**.

3.      Petitioner-Defendant Jamillo Donte Spight's *pro se* Motions to Supplement 2255 Case Law (Doc. No. [127], [129] & [132]) are **GRANTED** to the extent the Court considered and reviewed *United States v. Pettis*, 2016 WL 5107035 (D. Minn. Sept. 19, 2016).

4.      No evidentiary hearing is required in this matter.

5.     No Certificate of Appealability will be issued to the Petitioner-Defendant.

**LET JUDGMENT BE ENTERED ACCORDINGLY**.

Dated:  March 6, 2017          s/Donovan W. Frank
                               DONOVAN W. FRANK
                               United States District Judge